COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 14, 2024

Ryan D. Stottmann, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Robert J. Kriner, Jr., Esquire
Chimicles, Schwartz Kriner & Donaldson-Smith LLP
2711 Centerville Road, Suite 201
Wilmington, Delaware 19808

RE: ***Product Madness, Inc. v. Brooke Kingston,***
Civil Action No. 2024-0040-MTZ

Dear Counsel:

Plaintiff Product Madness, Inc. and defendant Brooke Kingston were counterparties to an arbitration proceeding. Product Madness prevailed, and this Court has since confirmed the arbitration award. The parties now dispute whether portions of Product Madness's complaint in this action and exhibits thereto are confidential under Court of Chancery Rule 5.1. For the reasons below, I conclude they are not.

## I. Background

Product Madness "operates a portfolio of digital entertainment products and services, including mobile applications . . . and web-based games."[1] Kingston was a user of one or more of Product Madness's mobile applications. Product Madness

---

[1] D.I. 1 at Compl. to Confirm / Vacate Arb. Award ¶ 5 [hereinafter "Compl."].

and Kingston were bound by Product Madness's terms of service (the "TOS").[2]

The TOS included a mandatory arbitration provision.[3] That provision also required

the parties to maintain the confidentiality of any arbitration proceeding brought

under the TOS:

> You and [Product Madness] shall maintain the confidential nature of the arbitration proceedings and the arbitration award, including the arbitration hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary hearing, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.[4]

Kingston initiated an arbitration proceeding against Product Madness in

accordance with the TOS. Product Madness prevailed, with the arbitrator

dismissing Kingston's claims.[5] Product Madness filed a complaint in this Court

seeking confirmation of the arbitration award.[6] The parties stipulated to

confirmation,[7] and the Court granted that stipulation.[8]

---

[2] Compl., Ex. B. Kingston cites a different version of the TOS in her motion. D.I. 11 at Mot., Ex. B. The conclusions set forth in this letter are the same regardless of the version I proceed under.

[3] Compl., Ex. B § 13.

[4] *Id.*

[5] Compl., Ex. A at 6–14.

[6] Compl.

[7] D.I. 9.

Product Madness's complaint attached as exhibits the arbitration award, the TOS, and Kingston's arbitration demand.[9] It filed the complaint and exhibits under seal in accordance with Court of Chancery Rule 5.1.

Product Madness later filed public versions of the complaint and exhibits.[10] Product Madness designated no material as confidential; Kingston designated as confidential all material in the complaint reflecting the substance of the arbitration demand and proceedings as well as nearly the entirety of the arbitration demand and award. All material Kingston designated was redacted from the public versions. Product Madness filed a notice of challenge to confidential treatment under Rule 5.1,[11] and Kingston responded with a motion for continued confidential treatment.[12] Product Madness opposed the motion.[13]

In Kingston's view, Product Madness filed this action to circumvent the TOS (and in doing so breached the TOS). In Product Madness's view, Kingston knows none of the redacted information is confidential but seeks continued

---

[8] D.I. 10.

[9] Compl., Exs. A–C.

[10] D.I. 4.

[11] D.I. 6.

[12] D.I. 11 at Mot.

[13] D.I. 16 at Opp.

confidential treatment of the arbitration award because she intends to continue to file similar arbitration actions in the hopes of obtaining a favorable result to tee up a follow-on class action lawsuit.  In other words, each party accuses the other of gamesmanship.

## II.    Analysis

"All court proceedings are presumptively open to the public," and that presumption extends to court filings.[14]  The right of access enables the public to "judge the product of the courts in a given case."[15]  This, in turn, "helps ensure 'quality, honesty and respect for our legal system.'"[16] Court of Chancery Rule 5.1 "reflects the Court of Chancery's commitment to these principles."[17]  It states that, "[e]xcept as otherwise provided" in the rule, "proceedings in a civil action are a

---

[14] *In re Nat'l City Corp. S'holders Litig.*, 2009 WL 1653536, at *1 (Del. Ch. June 5, 2009).

[15] *In re Oxbow Carbon LLC Unitholder Litig.*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016) (ORDER) (internal quotation marks omitted) (quoting *Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)).

[16] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *1 (Del. Ch. Mar. 27, 2013) (quoting *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)).

[17] *Id.* at *2.

matter of public record."[18]   This language "makes clear that most information

presented to the Court should be made available to the public."[19]

Under Rule 5.1, information may be "filed confidentially and not available

for public access" where good cause is shown.[20]   "The party or person seeking to

obtain or maintain Confidential Treatment always bears the burden of establishing

good cause for Confidential Treatment."[21]   Good cause exists "only if the public

interest in access to Court proceedings is outweighed by the harm that public

disclosure of sensitive, non-public information would cause."[22]   In considering

whether good cause exists, the Court first asks whether the information is sensitive

and non-public; if it is, the Court balances the harm of disclosing that information

against the public interest in access to court proceedings.[23]   Arbitration proceedings

---

[18] Ct. Ch. R. 5.1(a).

[19] *Sequoia Presidential Yacht Gp. LLC. v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013) (emphasis omitted) (citation omitted) (internal quotation marks omitted).

[20] Ct. Ch. R. 5.1(b).

[21] *Id.* R. 5.1(b)(3).

[22] *Id.* R. 5.1(b)(2).

[23] *Id.* (describing the requirements for showing "good cause"); *see Soligenix, Inc. v. Emergent Prod. Dev. Gaithersburg, Inc.*, 289 A.3d 667, 676–77 (Del. Ch. 2023) ("Information is not entitled to confidential treatment merely because it is not publicly available.  The non-public information must be 'sensitive' and the party must identify the specific information worthy of confidential treatment." (citation omitted)); *Al Jazeera*

are not inherently confidential, and a party seeking to maintain the confidentiality of documents relating to such a proceeding must independently satisfy Rule 5.1's requirements.[24]

### A.    Kingston's Failed To Establish Good Cause By Relying Only On The TOS.

Kingston argues that the TOS's language requiring the parties to maintain the arbitration's confidentiality renders the information "sensitive" within the meaning of Rule 5.1.  Our courts have "repeatedly rejected" the argument that parties can satisfy the requirement that information be sensitive by contract.[25]

---

*Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *5 (Del. Ch. Oct. 14, 2013) ("Rule 5.1 does not envision a scenario where information in court documents, such as the nature of the dispute, is kept confidential merely because disclosure has the potential for collateral economic consequences."); 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.02 at 4-7 to -8 (2d ed. Dec. 2023 update) ("The modifier 'sensitive' makes clear that information does not qualify for Confidential Treatment merely because it is non-public or potentially embarrassing.").

[24] *Soligenix*, 289 A.3d at 672 ("[I]f parties to an arbitration desire confidentiality, they must do so by contract.  But even then, as discussed below, once the parties bring their dispute to court, their agreement does not control these proceedings.").

[25] *Id.* at 674–75 (collecting cases); *Al Jazeera Am.*, 2013 WL 5614284, at *3 ("[A] confidentiality provision, even when carefully negotiated, cannot form the basis for this Court to treat contractual provisions as confidential under Rule 5.1, assuming that the Rule itself does not provide such a basis."); *see Kronenberg v. Katz*, 872 A.2d 568, 608 (Del. Ch. 2004) ("The problem that Katz and EnterSport face is that a court, such as this one, cannot indulge the desire of private parties to be self-created 'secret citizens' who can litigate in courts of public record behind a judicially enforced screen.").

Indeed, that parties cannot contract into Rule 5.1 confidentiality is "well settled."[26]

Kingston's argument fails, and she makes no other argument that the redacted

information is sensitive and non-public under Rule 5.1 such that the good cause

standard is not met.

### B.     Kingston's Remaining Arguments Fail.

Kingston makes two other arguments.  The first is that it would be a good

public policy to enforce contractual confidentiality provisions in connection with

uncontested proceedings to confirm arbitration awards.  Others have made the

same suggestion.[27]  But Rule 5.1 is clear that "[e]xcept as otherwise provided in

th[e] Rule, proceedings in a civil action are a matter of public record."[28]  As

explained, Kingston failed to demonstrate the redacted information falls within one

---

[26] *Polychain Capital LP v. Pantera Venture Fund II LP*, 2021 WL 5910079, at *5 (Del. Ch. Dec. 10, 2021) ("The arbitrator's reasoning is sound as to this issue, but it is not necessary for my disposition of this motion.  It is well settled that parties cannot subvert Rule 5.1 by contract.").

[27] *See* Mitch Zamoff, *Safeguarding Confidential Arbitration Awards in Uncontested Confirmation Actions*, 59 Am. Bus. L.J. 505, 542–58 (2022) (discussing the advantages of a general rule that "allows the sealing of confidential arbitration awards in uncontested confirmation actions" where parties contracted to do so); *see also Soligenix*, 289 A.3d at 673 n.10.  *But see Del. Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510 (3d Cir. 2013) (concluding a mechanism for confidential government-sponsored arbitrations before this Court violated the First Amendment to the United States Constitution), *cert. denied*, 572 U.S. 1029 (2014).

[28] Ct. Ch. R. 5.1(a).

of Rule 5.1's exceptions. I simply cannot maintain Rule 5.1 confidentiality under these circumstances.

The second is that Product Madness should be estopped from challenging the TOS's confidentiality provision's enforceability because "Product Madness successfully argued in the Arbitration that the TOS was an enforceable contract."[29] "The two requirements of judicial estoppel are that a litigant advances 'an argument that contradicts a position previously taken by that same litigant, and that the Court was persuaded to accept [that argument] as the basis for its ruling.'"[30] "Judicial estoppel is a discretionary equitable remedy meant to protect the integrity of the judicial process."[31]

Product Madness has not contradicted its earlier position that the TOS is an enforceable agreement. Whether Kingston's designations are confidential under Rule 5.1 has nothing to do with whether the TOS is enforceable.

Kingston's motion is **DENIED**. The Register in Chancery shall unseal the complaint and exhibits thereto.

---

[29] D.I. 11 at Mot. ¶ 22.

[30] *La Grange Communities, LLC v. Cornell Glasgow, LLC*, 74 A.3d 653 (Del. 2013) (quoting *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. July 13, 1998)).

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[31] *Darden v. New Castle Motors, Inc.*, 2014 WL 1392969, at *1 (Del. Super. Mar. 27, 2014), *aff'd*, 103 A.3d 515 (Del. 2014).